(Pleito No. 159.—Fallado el 12 de Noviembre de 1901.)

## Banco Territorial contra Vidal.

Recurso contra sentencia dictada por la Corte de Distrito de Arecibo.

EMBARGO. La anotación preventiva de un embargo sólo es válida respecto á gravámenes constituídos con posterioridad á dicha anotación, no pudiendo lastimar el derecho de dominio en un crédito hipotecario adquirido con anterioridad en virtud de cesión en pago de una deuda, aun cuando se hubiere hecho la anotación preventiva de embargo con anterioridad á la inscripción de dicha cesión.

### SENTENCIA.

En la Ciudad de San Juan Bautista de Puerto Rico, á doce de Noviembre de mil novecientos uno, en el pleito de tercería de dominio, seguido en la Corte de Distrito de Arecibo, por las sociedades mercantiles señores Vidal y Cª y Trujillo, Subiñá y Cª, avecindados en Ponce, con el Banco Territorial y Agrícola establecido en esta ciudad, y con los estrados respectivos en representación de la sociedad mercantil N. Canals y Cª, establecida en Utuado; pendiente ante

Nos en virtud de recurso de casación por infracción de ley interpuesto por el Banco referido y en su defensa y representación por el Letrado Don Juan Guzmán Benítez, habiéndolo estado la sociedad Vidal y Cª por el Licenciado Don Herminio Díaz Navarro, no habiendo comparecido la otra parte recurrida señores Trujillo, Subiñá y Cª ni N. Canals y Cª, que fué declarada rebelde en el inferior.—Resultando: Que por escritura pública otorgada en Ponce, á veinte y ocho de Abril de mil novecientos, ante el Notario Don Rafael León, la sociedad N. Canals y Cª del comercio de Utuado, cedió en pago de deudas á las sociedades Vidal y Cª y Trujillo, Subiñá y Cª, un crédito hipotecario que tenían á su favor contra Don José del Río y Ríos ó del Río, garantizado por hipoteca sobre una finca rústica.—Resultando: Que con testimonio de esa escritura, debidamente inscrita en el Registro de la Propiedad el veinte y cinco de Mayo del año próximo pasado, las sociedades cesionarias, representadas por el Letrado Don Elpidio de los Santos, formularon demanda de tercería de dominio contra el Banco Territorial y Agrícola y N. Canals y Cª fundándose en que eran dueños del crédito cedido y que había sido embargado por el expresado Banco, en el ejecutivo que seguía contra N. Canals y Cª, que al otorgarse la escritura de cesión en veinte y cinco de Abril de mil novecientos, el crédito cedido constaba en el Registro, libre de todo gravamen y por consiguiente no pesaba sobre él anotación preventiva alguna; que el embargo por el Banco se verificó el cuatro de Mayo de mil novecientos.—Resultando: Que admitida la demanda y previo emplazamiento de los demandados, compareció el Banco Territorial y Agrícola, representado por el Letrado Don Juan de Guzmán Benítez, quien alegó contra la demanda, que si bien la cesión se verificó antes de hacerse la anotación del embargo, se inscribió con posterioridad á dicha anotación y que en virtud de la cesión en pago, Vidal y Cª y Trujillo, Subiñá y Cª estaban obligados á abonar al Banco el importe de las sumas anotadas á su favor en virtud de la cesión en pago; que el

Banco, desde mediados de Junio de mil novecientos, había obtenido sentencia firme contra N. Canals y Cª, y embargó bienes que ya estaban embargados por otros acreedores, que en subasta se los adjudicaron. Estableció reconvención para que se declarase la nulidad de la cesión, fundándose en la Orden general número 16 de 1? de Diciembre de mil ochocientos noventa y ocho, que abolió el impuesto de derechos reales, en la orden judicial de veinte del mismo, que aclara la del seis del mismo sobre contratos simulados y traslación de dominio de bienes en ciertas circunstancias; que la cesión se había hecho en el concepto de adjudicación en pago procedente de operaciones mercantiles; que en la fecha de la cesión N. Canals y Cª adeudaba al Banco, se había dictado sentencia firme de remate y expedido mandamiento de embargo contra sus bienes; que N. Canals y Cª no recibieron á presencia del Notario el importe de la cesión ni depositaron en parte alguna el importe de las deudas del Banco, ni conservaron otros bienes que un crédito hipotecario contra Don Felipe Rodríguez, por dos mil doscientos quince pesos cincuenta centavos, embargados por el Banco y de notoria insuficiencia, é interesó la absolución del Banco por la tercería interpuesta, mandando cancelar la inscripción de la cesión del crédito del Río, á no ser que los cesionarios paguen al Banco el importe de las sumas anotadas sobre dicho crédito; se dictare la nulidad del contrato de cesión celebrado por los terceristas con N. Canals y Cª, en veinte y cinco de Abril, por ser similado, cancelándose su inscripción, debiendo responder en caso contrario de lo adeudado por el cedente en cuanto no exceda al valor de la cesión, con las costas á los terceristas.—Resultando: Que los terceristas contestando la reconvención interesaron se declarase sin lugar, fundándose en que N. Canals y Cª les adeudaban mil ciento treinta y cuatro pesos cuarenta y dos centavos, y mil setenta y siete pesos quince centavos, respectivamente, de operaciones mercantiles, adquiriendo en pago de esas cantidades el crédito hipotecario en cuestión y en su consecuencia el dominio pleno de ese

crédito, en época en que sobre él no pesaba gravamen alguno, ni menos tuviese el Banco demandado anotado embargo alguno sobre él; que al aceptar esa cesión lo efectuaron para salvar sus intereses; que no hubo que consignar precio de la cesión, por ser en pago de una deuda, y por consiguiente tampoco había que depositar cantidad alguna, y que la causa del contrato es perfectamente lícita.—Resultando: Que acusada la rebeldía á la sociedad N. Canals y Cª, se les tuvo por rebeldes, haciéndoseles saber esa providencia, y se señaló día para la proposición de prueba, practicándose las propuestas; y sustanciado el pleito por todos los demás trámites, la Corte del Distrito de Arecibo dictó sentencia en diez y seis de Marzo del corriente año, declarando con lugar la demanda de tercería de dominio y á favor de los terceristas el crédito hipotecario embargado por el Banco Territorial y Agrícola, el cual se deja sin efecto y se manda cancelar la anotación del mismo en el Registro de la Propiedad; y sin lugar la nulidad del contrato y demás pronunciamientos que se interesan como reconvención en la contestación á la demanda, con las costas á cargo del expresado Banco.— Resultando: Que la representación del Banco Territorial y Agrícola ha interpuesto contra dicha sentencia recurso de casación por infracción de ley, fundado en los números 1 y 7 del artículo 1,690 de la Ley de Enjuiciamiento Civil, citando como infringidos:—1º El artículo 25 en relación con el 27, ambos de la Ley Hipotecaria, porque á pesar de que el Banco hizo constar su derecho en el Registro, ó sea el embargo sobre el crédito hipotecario de N. Canals y Cª contra Don José del Río, con fecha cuatro de Mayo de mil novecientos, y que la escritura de cesión de ese mismo crédito hipotecario hecha por N. Canals y Cª á los Sres. Vidal y Cª y Trujillo, Subiñá y Cª no se inscribió hasta el veinte y cinco de Mayo del mismo año, la sentencia, sin embargo, le atribuye eficacia desde fecha anterior á la inscripción, y en perjuicio de tercero, cual lo es el Banco Territorial y Agrícola por no haber intervenido en el contrato

celebrado entre N. Canals y Cª y los terceristas.—2º El artículo 1,526 del Código Civil, concordante del 25 de la Ley Hipotecaria, y sin el cual la cesión de un crédito no surtirá efecto contra tercero, refiriéndose á inmueble, sino desde la fecha de su inscripción en el Registro; precepto que se inspira en el principio fijo é invariable del artículo 606 del mismo Código y otros muchos, según los cuales todas las cuestiones relativas al nacimiento, regulación y extinción del derecho sobre bienes inmuebles han de resolverse en el Registro de la Propiedad.—3º La doctrina legal establecida, entre otras muchas, en las sentencias del Tribunal Supremo de España de veinte y ocho de Febrero de mil ochocientos y ocho y tres de Junio de mil ochocientos noventa y dos, y las resoluciones de la Dirección general de los Registros de seis de Septiembre de mil ochocientos noventa y dos, que dice que "la enajenación no puede perjudicar *en caso alguno* el derecho del que tuvo la anotación del embargo," y la de diez y ocho de Mayo de mil ochocientos noventa y ocho.—4º El artículo 71 de la Ley Hipotecaria, según el cual la anotación obtenida por el Banco á tenor del artículo 42, número 3º de la misma ley, no puede ser perjudicada por la enajenación hecha por los Sres. N. Canals y Cª á favor de los terceristas, y durante el litigio, ó sea precisamente un día después de haber ordenado el Tribunal de Distrito que se tomase la anotación preventiva.—"El 2º considerando de la sentencia resuelve negativamente este alegato del Banco, fundándose en que el Banco no es tercero porque su derecho no tiene carácter de real; y aparte de que el Banco es indudablemente tercero en el caso de autos, el artículo 71 infringido no dice: "sin perjuicio *del derecho de tercero*," sino "sin perjuicio del derecho de *la persona* á cuyo favor se haya hecho *la anotación*."—"No cabe, pues, aplicar aquí la teoría de la distinción que algunos autores establecen entre las anotaciones y las inscripciones con relación á terceros; este es un caso concreto en el que la ley concede expresamente á *la anotación* hecha á favor

de cualquier persona (sea ó no tercero) la necesaria eficacia
para que se cancele la inscripción de enagenación hecha
durante el litigio.—Y tanto es así que el mismo artículo
dice que si  el adquirente no pagase en el término de
diez días la suma consignada en *la anotación* "se procederá á
cancelar en el Registro la inscripción de su dominio, *así
como cualquiera otra que se hubiese extendido después de la
anotación.*"—"Nada importa que la escritura de cesión se
otorgase antes de tomarse la anotación en el Registro,
aunque un día después de haber sido decretada por la Sala ;
el artículo 71 limita expresamente la cuestión al Registro de
la Propiedad, ordenando que la inscripción del dominio, así
como cualquiera otra que se hubiese extendido después de la
anotación tomada á tenor de los números 2? y 3? del artículo
42 de la misma ley, será cancelada si el adquirente no
pagase en el término de diez días la suma anotada ;" luego
habiéndose presentado é inscrito la cesión á favor de los
terceristas el día veinte y cinco de Mayo de mil novecientos
ó sea veinte y un días después del día cuatro en que se tomó
la anotación por el Banco, á tenor del caso 3? del artículo 42
de la ley, es evidente que esa inscripción debe cancelarse ya
que los terceristas no han abonado la suma anotada, sin que
estemos en el caso de establecer distingos, que rechaza
la claridad del precepto, sobre si el derecho del Banco
es real ó personal, ni sobre la eficacia de las anotaciones
contra las inscripciones."—"Comprendemos la duda en otros
conceptos de la ley en que se habla de inscripciones y no de
anotaciones, pero el artículo 71 es terminante ; y aunque
algunos puedan considerarlo como una reforma en la materia,
sus términos no dan lugar á la más pequeña duda ; tanto
más si se tiene en cuenta que, con la Ley Hipotecaria
vigente, las anotaciones que se tomen á tenor de los números
2? y 3? del artículo 42 de la Ley Hipotecaria, se han de
fundar generalmente en derecho de carácter personal."—
5? La Orden Judicial de veinte de Marzo de mil ochocientos
noventa y nueve, publicada en la *Gaceta* del día siguiente, y

aclaratoria de otra orden de seis del mismo mes y año, según
la cual se reputarán contratos simulados los de traslación de
dominio de bienes, después de abolido el impuesto de
derechos reales, sin causa ó con causa ilícita, según las leyes,
y con la intención de que los acreedores de algunos de los
contrayentes no puedan hacer efectivos sus créditos en dichos
bienes, estimándose, en su caso, comprendidos entre tales
contratos simulados, los de trasmisión de bienes otorgados
por personas que al hacerlos tenían ó tengan contraídos
débitos no hipotecarios, ú otros compromisos de garantizar
deudas de otros si, verificados aquellos contratos, no da fe el
Notario en la escritura de haberse entregado el precio á su
presencia ó no depositaron en efectivo en su establecimiento
bancario ó en otro cualquiera, á satisfacción de sus acreedo-
res, el importe total de aquellas obligaciones, ó no retuvieron
en su poder bienes bastantes con que cubrirlos."—"En las
consideraciones legales número 4º de la sentencia, se dice
que el contrato de cesión tiene una causa lícita en las
cuentas mercantiles de los Sres. Vidal y Cª y Trujillo,
Subiñá y Cª, y que aun no probándose la existencia de
esas cuentas, la causa en los contratos y solicitud se
presumen, según el artículo 1,277 del Código Civil."
—"La infracción que alegamos es manifiesta, pues nosotros
nos hemos referido á la simulación prevista en la Orden
Judicial citada, que existe evidentemente, á pesar de las
cuentas mercantiles, de cuya verdad no dudamos, y para
cuyo pago se hizo la cesión; pues precisamente, lo que la
Orden Judicial procura es que no se pague por convenios
particulares á unos acreedores no hipotecarios, con perjuicio
de otros de la misma clase, como ocurre en el presente caso,
quedando como medio de cobro la subasta pública, en la
cual pueden todos los acreedores intervenir, y quedar á
cubierto de arreglos privados.—Se ha infringido, pues, esa
Orden Judicial, al negarnos el ejercicio de los derechos que
ella nos concede—"La Sala, pues, ha infringido la Orden
Judicial citada, al resolver la licitud de la cesión, fundándose

en caso distinto de los tres que la tantas veces citada Orden Judicial establece, es decir, entrega del precio ante Notario, consignación de lo debido á los demás acreedores comunes, y retención en poder del enajenante, de bienes bastantes con que cubrir esas obligaciones.—"6.º  Como consecuencia de la anterior infracción, se ha cometido también la del artículo 1,295 del Código Civil, pues el contrato de cesión tiene por causa ilícita el deseo de pagar á unos acreedores, burlando á otros; y por haberse hecho la trasmisión de bienes en forma ilícita, dicho contrato no debe producir efecto alguno.—"7.º Los artículos 1,291, número 3, y 1,297 del Código Civil, en relación con los 41, número 2, y 36 y 37 de la Ley Hipotecaria, porque, á pesar de que la Sala reconoce que existen todas las circunstancias necesarias para la aplicación de esos preceptos, y como resultado de ellos para declarar rescindido el contrato de cesión, no lo hace con el pretexto de que el Banco no lo ha solicitado, sino que ha pedido solamente la nulidad del contrato; debiendo consignarse la rescisión en este caso, como un efecto de la nulidad solicitada por el Banco.—"8.º  Error de hecho en la apreciación de las pruebas, porque examinadas en conjunto las propuestas por esta parte, y tal como se reseñan en el sexto resultando, fundadas todas en documentos auténticos, queda plenamente justificado, que desde mediados de mil ochocientos noventa y nueve, reclamó el Banco inútilmente el pago de su deuda, habiéndose adjudicado á otros acreedores los bienes que embargó primeramente; que los Sres. N. Canals y Cª no poseían, según el Registro, otros bienes que el crédito de Don Felipe Rodríguez y Mejías, adjudicado al Banco, é insuficiente para el pago de la deuda principal, según se declara en la misma sentencia; que si bien aparecía otro crédito, á favor de N. Canals y Cª, era el de Don José del Río, que fué cedido en veinte y ocho de Abril de mil novecientos á los terceristas, con lo que se prueba que no poseían otros bienes, según el Registro; que desde ocho de Agosto de mil ochocientos noventa y nueve, y con motivo de la

inundación ocurrida ese día, desapareció la caja y parte de los libros de N. Canals y Cª; que según los catastros de la riqueza pública en Utuado y la matrícula de industria y comercio y demás antecedentes del ejercicio económico de mil novecientos á mil novecientos uno, la sociedad N. Canals y Cª, que existió en Jayuya, no tiene ningún establecimiento mercantil ni paga ninguna clase de contribución por ese concepto, ni aparecen como dueños de ninguna propiedad, de donde se deduce, que dichos señores carecían de bienes, no el día doce de Diciembre de mil novecientos, como dice la Sala sentenciadora, sino en los meses anteriores al primero de Junio de mil novecientos, en que se hacían las declaraciones de riquezas, de suerte que si en veinte y ocho de Abril de mil novecientos, fecha de la cesión del crédito, los Sres. N. Canals y Cª hubieran tenido algunos bienes, figurarían necesariamente en los catastros y matrícula á que se refiere el Alcalde de Utuado; que al practicar la diligencia de emplazamiento de N. Canals y Cª, consta en catorce de Septiembre de mil novecientos, que ya estaba cerrada la casa en que estaba establecida la mercantil de N. Canals y Cª, por no existir en aquel barrio ningún socio ni familiar de ella; que de la certificación de los autos principales entre el Banco y N. Canals y Cª, se comprueba que en veinte y siete de Abril de mil novecientos se había presentado certificación del Registro, acreditando el mismo extremo, ya expresado, de no tener los demandados otros bienes inscritos á su nombre, que los dos créditos de Don Felipe Rodríguez y Don José del Río, y en esa fecha se ordenó anotar el embargo pedido por el Banco; que desde catorce de Mayo de mil ochocientos noventa y nueve, se presentaron los Sres. N. Canals y Cª, en suspensión de pagos, ante el extinguido Juzgado de Utuado; sin que llegara á celebrarse la Junta de acreedores, ni conste convenio alguno; que según la certificación del Registro, prueba de los terceristas, al verificarse la cesión de N. Canals y Cª, á favor de Vidal y Cª y Trujillo, Subiñá y Cª, el crédito cedido se hallaba afecto al embargo

del Banco, y que como ya se ha dicho antes, desde el ciclón de ocho de Agosto de mil ochocientos noventa y nueve, la mercantil N. Canals y Cª, no existía legalmente, pues no tenía libros ni caja, según declaración de Don Juan F. Alonso, apoderado que fué de dicha mercantil; y por último, que precisamente un día después de haberse ordenado la anotación á favor del Banco, otorgaron N. Canals y Cª la cesión del crédito, habiéndose esta cesión inscrito mucho después de hecha la anotación, de la que tuvieron conocimiento los terceristas, sin reclamar contra ella."—"Todas estas pruebas, examinadas en conjunto, y cada una de por sí han de traer al ánimo de la Sala, el convencimiento de la errónea apreciación del Tribunal sentenciador, al estimar que sólo hemos probado que los Sres. N. Canals y Cª, no tenían otros bienes con que hacer frente á sus obligaciones no hipotecarias *el día doce de Diciembre*, como se afirma en el quinto considerando, fijándose tan sólo en la fecha de la certificación del Alcalde de Utuado, y no en lo que esa misma certificación y las demás pruebas significan.—9.º Error de derecho en la apreciación de las pruebas, con infracción de la Orden Judicial de veinte de Marzo de mil ochocientos noventa y nueve, al estimar como fundamento de la licitud de la cesión, la existencia de la deuda de N. Canals y Cª, á favor de los terceristas, siendo así que se trata de una causa ilícita distinta, cual es el pago de cualquier deuda no hipotecaria, por my legítima que sea, haciendo trasmisión de bienes sin depositar en un banco dinero efectivo para cubrir las demás obligaciones de igual carácter ó sin reservarse bienes con que poder cancelarlas; así como también porque en esa orden judicial no se distingue si la *retención* de bienes bastantes ha de ser tan sólo el día que se haga la trasmisión, cosa que más bien es contraria al espíritu de la misma orden, que tiende á evitar la trasmisión de bienes por convenios privados, á favor de unos acreedores, en perjuicio de otros. "También se ha infringido en la apreciación de la prueba el artículo 1,214

del Código Civil, pues la retención de bienes bastantes por parte de N. Canals y Cª significa la extinción del derecho del Banco á que se declare simulado el contrato, y por lo tanto su prueba incumbe á los demandados en la reconvención, siendo de advertir que nada han alegado ni probado en contra de la afirmación del Banco en cuanto á ese particular, pues los terceristas, únicos que contestaron la reconvención, se limitaron á repetir lo que dijimos nosotros, ó sea que se nos había adjudicado otro crédito, el de Don Felipe Rodríguez, el cual, como la misma sentencia lo declara, fué insuficiente para que el Banco cobrase su deuda, después de haberla adquirido en pública subasta; de todo lo cual resulta aplicable el principio que en materia de procedimientos dice que el silencio ó las evasivas de una de las partes sobre hechos establecidos por la otra, ha de entenderse por aquiescencia á esas afirmaciones. "El Banco ha negado que N. Canals y Cª retuviesen en su poder bienes en la forma que ordena la Ley; y son los demandados los que deben probar la afirmativa; por lo que la Sala cometió, error de derecho al fundar su fallo en la supuesta falta por parte nuestra, de una prueba que no nos incumbe."—Visto: Siendo Ponente el Juez Asociado Don José M. Figueras Chiqués.— Considerando: Que no se han infringido los artículos 25 y 27 de la Ley Hipotecaria ni el 1,526 del Código Civil, como se expresa en los motivos 1º y 2º del recurso, porque no debe perderse de vista que cuando se trata del dominio de bienes inmuebles ó del de un crédito hipotecario, que es aquí la materia litigiosa, al acreedor que obtuvo anotación preventiva de un embargo practicado en él para la seguridad y garantía de su crédito, no se le puede estimar como tercero, porque el artículo 44 de la Ley Hipotecaria, conforme con el 1,923 del Código Civil, únicamente le concede el derecho de preferencia respecto á los bienes anotados, y sólo en cuanto á créditos posteriores, por cuya razón no puede dicha anotación lastimar el derecho de dominio que en el crédito hipotecario, objeto de la demanda de tercería, adquirió un tercero

con anterioridad por virtud de la cesión en pago que del mismo se le hizo—Considerando: Que ni es aplicable ni han sido tampoco infringidos el artículo 71 de la citada Ley Hipotecaria, y la doctrina del Tribunal Supremo de España á que se refieren los motivos 3.º y 4.º del recurso, pues comparando el artículo 44 de que se ha hecho mérito con el 71 que se supone infringido, claramente se observa que éste se refiere á enajenaciones ó gravámenes realizados ó constituídos respectivamente con posterioridad á la anotación, y en el presente caso y en orden al tiempo, resulta todo lo contrario.—Considerando: Que la interpretación que da el recurrente á dicho artículo 71 conduciría á la anulación completa de los artículos 44 de la Ley Hipotecaria y 1,923 del Código Civil, que son las disposiciones que armónicamente señalan los únicos defectos que alcanzan las anotaciones, como la de que se trata, sin que puedan entenderse los párrafos 2.º, 3.º y 4.º del referido artículo 71 sino como el procedimiento adecuado para realizar el derecho otorgado por el párrafo 1.º, ó sea el de que las ventas ó enajenaciones hechas con posterioridad á la anotación, no redunden en perjuicio del derecho de la persona á cuyo favor se hizo aquélla.—Considerando: Que la Corte del Distrito de Arecibo tampoco ha incurrido en los errores que se señalan en los motivos 5.º y 6.º, porque la orden judicial de veinte de Marzo de mil ochocientos noventa y nueve que se supone infringida, subordina todos sus artículos al primero, y claramente da á entender la locución "en su caso", empleada en el comienzo del segundo, y que no contenía la orden general enmendada de seis del mismo mes y año, que para reputar simulado un contrato es condición precisa é indispensable que se haya celebrado sin causa ó con causa ilícita según las leyes, y con la intención de que los acreedores de alguno de los contrayentes no puedan hacer efectivos sus créditos en los bienes objeto de la traslación del dominio.—Considerando: Que el contrato celebrado entre los Sres. N. Canals y Cª, Vidal y Cª y Trujillo, Subiñá y Cª es oneroso y tiene

por causa el pago de una deuda anterior comprobada en autos, siendo por consiguiente lícita porque no se opone á las leyes ni á la moral, de donde se deduce que no se ha infringido el artículo 1,725 del Código Civil.—Considerando: Que las cuestiones no discutidas en el pleito ni resueltas en la sentencia, no pueden ser objeto del recurso de casación y al citar como infringuidos en el 7º motivo los artículos 1,291, número 3º y 1,297 del Código Civil, en relación con los artículos 41, 36 y 37 de la Ley Hipotecaria, se plantea por primera vez la cuestión de rescisión del contrato, distinta de la de nulidad del mismo, que fué la debatida y resuelta por la sentencia recurrida.—Considerando: Que es ocioso entrar á discutir y resolver si se han cometido ó no los errores de hecho y de derecho en la apreciación de las pruebas, de que tratan los motivos 8º y 9º del recurso, porque el primero y principal fundamento de la sentencia al negar la nulidad del contrato de cesión, es la justificación que se ha hecho de la licitud de la causa, y esta circunstancia se ha reconocido expresamente por el recurrente que funda su pretensión sobre nulidad en otros motivos de la orden judicial citada, que están subordinados á la prueba de esa circunstancia, fundamento primordial del fallo. — Fallamos: Que debemos declarar y declaramos no haber lugar al recurso de casación por infracción de ley interpuesto por el Banco Territorial y Agrícola, á quien condenamos en las costas; y líbrese á la Corte de Distrito de Arecibo la certificación correspondiente, con devolución de los autos que ha remitido.—Así por esta nuestra sentencia, que se publicará en la *Gaceta Oficial,* lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—José C. Hernández.—José Mª Figueras.—J. H. McLeary.

Publicación.—Leída y publicada fué la anterior sentencia por el Sr. Juez Asociado del Tribunal Supremo Don José Mª Figueras Chiqués, celebrando audiencia pública dicho

Tribunal en el día de hoy, de que como Secretario certifico en Puerto Rico, á doce de Noviembre de mil novecientos uno. E. de J. López Gaztambide, *Secretario.*